### JAQUES et al. v. ELLIS.
#### No. 13998.

Court of Civil Appeals of Texas. Dallas.
March 4, 1949.

Rehearing Denied March 25, 1949.

Looney & Clark, of Austin and Baker & Baker, of Sherman, for appellants.

Webb & Rogers, of Sherman, for appellee.

CRAMER, Justice.

This is an action by appellee Grady Ellis for damages, actual and exemplary, growing out of assault and battery on him by appellants, John Earl Jaques and his brother, Douglas C. Jaques, at the Woodlawn Country Club in Grayson County. The record discloses that appellee, with his wife, arrived at the Country Club at about Nine o'clock on the night of August 7, 1947, for the purpose of checking the inventory of dining room supplies on hand; he was an officer of the club; he contacted the manager in the bar, but, just before that, passed appellants whom he did not know. One of them asked him to get a drink, to which he answered that he had had supper and did not care for one. After he contacted the club manager and as he was leaving the bar, appellants, as he entered the dining room, placed themselves, one in front and the other behind him. Appellee testified that the one in front of him hit him in the face and, as he was knocked around, the other hit him. Appellee's testimony was that one of the brothers struck him twice.

Appellee was seriously injured, his jaws being broken, pieces of two teeth removed. The doctor wired appellee's jaws together, and for several weeks during the period his jaws were wired together appellee was on liquid diet which he sipped through a straw between his teeth; he suffered headaches, etc., and still suffers from the effects of the injury.

The jury awarded $2,000 actual and $500 exemplary damages separately against each defendant and found medical services in the past at $385 and in the future at $300; also found that both brothers acted as principals. The trial court entered judgment for $5,-685 jointly against defendants.

Appellants brief 34 points of error. In the 1st, 2nd and 11th points appellants complain of the asking of improper questions to appellant John Earl Jaques under the following circumstances: Appellee used John Earl Jaques as his first witness, and after he testified that he was associated with his father and brother in the Jaques Power Saw Company, located just south of Denison on the Denison-Sherman Highway, the following proceedings occurred:

"Q. Corporation, I believe that is? A. Yes.

"Q. A third each?

"Looney: We object to that, Your Honor please, as being immaterial and irrelevant to any issue in this case.

"Court: Sustain the objection.

"Webb: We except. Corporation of a million dollars?

"Looney: We object to that, if your Honor please, and move the Court to instruct the jury to disregard it, and we next move for a mistrial on the basis that it is of such prejudicial nature that the Court cannot cure it by instruction.

"Court: Sustained. The jury won't consider it. Motion for mistrial overruled.

"Looney: Note our exception to the ruling on our motion for a mistrial."

Point 11 complains of appellee's attorney asking the question "Did you ever have a man work for you that you couldn't whip?" The Court sustained an objection and instructed the jury not to consider it.

These questions were improper. Ordinarily the asking of improper questions is not reversible error, the court instructing the jury not to consider them. After considering the entire record, we are of the opinion that the instructions cured the error here; further, that the amount of damage allowed on the several issues submitted was not excessive; and under Rule 434, Texas Rules Civil Procedure, we find no actual injury resulted to appellants by reason thereof. City of Dallas v. Mitchell, Tex.Civ.App., 197 S.W.2d 586; Ramirez v. Acker et al., 134 Tex. 647, 138 S.W.2d 1054; King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855; Hess v. Millsap, Tex.Civ.App., 72 S.W.2d 923.

■ Point 3 complains of appellee's argument to the jury wherein he told the jury they make the findings of fact, "and irregardless to whatever court this case may be appealed to or may go subsequently from now on, nobody can change the answers you twelve men make to these issues. It is final on the Court of Civil Appeals, final on the Supreme Court, and final on His Honor. You are the only judges that will pass upon the facts." Objection that the above was not "on the facts and the law given in the charge, and it is a misstatement as to the law," was overruled. We overrule this assignment. We cannot say that the argument was prejudicial or damaged the appellants in any way. Rule 434; Moore v. Moore, 73 Tex. 382, 11 S.W. 396.

■ Points 4 to 8 inclusive complain of appellee's argument to the jury, as follows: "If they had come and expressed sorrow for their sins, there is no evidence that they did that—in Dallas the next night, Grady at the hospital,—couldn't swallow, his jaw bone bandaged and wired together, around the Baker where this doctor and this young man and their wives went to get something to eat, and get their pictures taken." The trial judge sustained an objection and instructed the jury to disregard it.

The appellee's attorney then argued, "If there was any evidence that they had expressed any sorrow they might holler and cry for sympathy, but there is no such evidence of that in the case." The court instructed the jury to disregard the argument.

Point 5 complains of the argument, "No civil court in this county, no civil jury in this county has ever tried a case that involved such wanton and malicious disregard of the rights of people as the facts in this case involve;" and again the jury was instructed to disregard it.

Point 6 complains that after harsh argument of appellee's attorney referring to Dr. Truett's testimony that he had not talked to the appellants or their attorney before he took the witness stand, and stating, "Counsel never took the stand and say that he never did talk to * * *," the court instructed the jury to disregard the argument; appellee's attorney then adding "We except. There wasn't a single witness brought here on the stand to corroborate that he hadn't talked to the lawyers or to the Jaques boys." Point 7 raises objections to argument that they "were not sure they would put them on, or not (referring to appellants), and we put them on." The jury was instructed to disregard it. Point 8 complaints of argument referring to "arthritis" when there was no evidence about arthritis, the court again instructing the jury to disregard it.

Here again we are of the opinion that the court's instructions cured the damage, if any, from such argument.

■ Points 26 to 31 complain of the court's rendering a joint judgment for the total amount of the damages found separably to have been caused by each appellant. These assignments are overruled. The jury found, in answer to special issue No. 17, that the appellants were acting together as principals, and the court properly defined the term "principals."

■ Point 32 complains of the trial court's declining to excuse a juror because, during the trial, appellants learned his daughter was represented by appellee's attorneys. The trial judge heard the evidence and found no harm resulted. This point is overruled. Points 33 and 34 complain of the trial court's permitting the wife of appellee to remain in the court room during the trial and not enforcing the rule as against her. The recovery by appellee was community property. She was a party by representation and there was no error in permitting her to remain in the court

room. Armstrong Packing Co. v. Clem, Tex.Civ.App., 151 S.W. 576, syl. 5; Sanders et al. v. Lowrimore et al., Tex.Civ.App., 73 S.W.2d 148, syl. 3, reversed and trial court's judgment affirmed on other grounds by Supreme Court, Tex.Com.App., 103 S.W.2d 739.

 The other points complain of the admission in evidence of appellants' conduct and acts prior to the assault in issue here, and of appellee's argument to the jury with reference thereto. Several witnesses were permitted to testify as to their conduct earlier in the same evening and prior to appellee's arrival at the Country Club—such as throwing themselves and their companions in the swimming pool, a fight with one Bratton, whose nose was bloodied by one of the brothers, which grew out of their statement that they could throw him into the pool because he was clean shaven, they having grown beards for a celebration at Denison (all men were encouraged to grow beards for such celebration), evidence of the drinking of liquor by the parties to this suit (but excluding evidence of drinking by others at the Club).

Appellant John Earl Jaques, over his attorney's objection, testified that he had two drinks of Bourbon before going to the Club on the night in question. Another witness testified that appellants' appeared intoxicated when they threatened and threw them into the pool; witness Bratton testified that the appellants were intoxicated, and another witness testified that they were drunk. As a general rule other similar acts are not admissible, but there are exceptions to this rule. Exemplary damage was an issue in this case. The court properly admitted such testimony on that issue of exemplary damages. Towler et ux. v. Stone et al., Tex.Civ.App., 37 S.W.2d 827. For a general discussion see 24 Texas Law Review 351. The evidence being admissible, the argument thereon was proper. These assignments are overruled.

▓ Appellants also insist that the cumulative effect of all the improper argument, etc., was harmful and requires a reversal of this case. In this connection we have reviewed the entire record, and have concluded that the evidence establishes a malicious, violent and treacherous attack,

unwarranted under the circumstances. That the evidence would have justified a much larger verdict and that therefore no harm resulted to appellants because of the accumulated effect of the matters complained of. King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855, syl. 8.

The judgment below is therefore affirmed.