**UTICA MUTUAL INSURANCE COMPANY,**
**Appellant,**

v.

**Lois Lola JACOBS, Appellee.**

**No. 625.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

June 21, 1972.

Chilton Bryan, Lowell T. Cage, Law Offices of Chilton Bryan, Houston, for appellant.

Robert E. Ballard, W. James Kronzer, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellee.

SAM D. JOHNSON, Justice.

Workman's compensation case brought by Lois Jacobs, appellee, against Utica Mutual Insurance Company, appellant.

Utica Mutual Insurance Company had in effect a policy of workman's compensation insurance with plaintiff's employer, Blalock Nursing Home. On August 22, 1968, Lois Jacobs was an employee of Blalock Nursing Home as a Licensed Vocational Nurse. On such date she allegedly injured her back while aiding a nurse's aid and helper in lifting a patient. The trial court, upon jury findings that Lois Jacobs was injured while working within the scope and course of her employment which occasioned temporary total incapacity from August 22, 1968, to August 19, 1971, and permanent partial incapacity from and after August 20, 1971, rendered judgment in favor of plaintiff appellee for $18,131.55.

The record reflects that on August 22, 1968, plaintiff experienced a sharp pain in her low back and down her left leg while attempting to lift a patient from her chair and into her bed at the nursing home. The pain being such, she left her job early that day and went to Dr. Wylie, who is the house doctor for Blalock Nursing Home. Dr. Wylie treated her for a strained back and later recommended she see Dr. Veggeberg, an orthopedic surgeon. Dr. Veggeberg prescribed physiotherapy and medications for several months without significant success. In October of 1968, plaintiff, at the request of the defendant Utica Mutual Insurance Company, went to Dr. William Price for both an examination and treatment. This was for one visit only.

In January of 1969, plaintiff's attorney sent her to see Dr. Barnes, who for a period of time did much the same as the doctors before him. Much later in the year Dr. Barnes had a myelogram run on plaintiff's back. Both Dr. Barnes and Dr. Lemak, the radiologist responsible for giving the myelogram, upon reviewing of the x-rays, suspected a defect to the lower spine. Surgery was thereafter performed whereupon it was confirmed that the last two or lower disc spaces were herniated causing pressure on the spine. Corrective action was taken, but to date has alleviated only a portion of plaintiff's pain.

Mrs. Jacobs did attempt to work at other nursing homes, but was either unable to continue because of her pain or unable to obtain employment because of the medical history concerning her back.

Utica Mutual Insurance Company has appealed urging numerous points of error. Points 1, 7, 8, 9 and 10 assert accumulation of error and improper jury argument. Point 2 asserts error in submitting certain special issues (6 and 10) and in refusing defendant's requested issues (A and B). Point 3 asserts error in the court's refusal to submit certain requested defensive issues (C through H). Point 4 asserts error in allowing Dr. Barnes to testify as to his

charges and the reasonableness of his and other charges. Point 6 asserts error in allowing the plaintiff to testify as to why she was allegedly turned down for jobs subsequent to the injury while disallowing defendant the right to counter with testimony of Jean Williford, director of nurses at Blalock Nursing Home. Points 5, 11, 12 and 13 assert error in rendering judgment on the jury's verdict because there was no evidence to support the findings of the jury, and in overruling defendant's motions for instructed verdicts and judgment notwithstanding the verdict.

In appellant's first group, points of error 1, 7, 8, 9 and 10, it is asserted that plaintiff's counsel, in their closing arguments to the jury, argued improperly by advising the jury of the effect of their answers to special issues, argued outside the evidentiary record and argued in a prejudicial manner; and if singularly not considered error, then cumulatively such constitutes reversible error. Appellant makes reference to the 99 grounds contained in its amended motion for new trial but presents specifically, in its brief, only a limited number of these. Only those brought forward by points of error will be considered. Tex. R.Civ.P. 324, 418; Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960).

Appellant first places great emphasis upon Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302 (1941). The "presumed harm" concept of this case, however, is no longer viable. Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953). The rule now is that "Before a judgment is reversed because of argument of counsel two things must appear: The argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Aultman v. Dallas Railway & Terminal Co., supra, p. 599; Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404 (1954).

The Supreme Court, in Otis Elevator Company v. Wood, 436 S.W.2d 324 (Tex.Sup.1968), defined improper jury argument as one of two types, curable or incurable. When the harmful effect of the argument can be eliminated by the trial judge's instruction to the jury to disregard what was just heard, it is curable. It is rendered harmless by the instruction. In such instance the objection must be promptly made, and an instruction requested or the error is waived. The second type of improper argument, incurable, is occasioned if it is so inflammatory that its harmful or acutely prejudicial nature could not be eliminated by such instructions. Failure to object in such case does not constitute waiver.

To determine whether a particular error or accumulation of errors was reasonably calculated to cause and probably did cause the rendition of an improper judgment is to be obtained from the entire record in the case. Gomez Leon v. State, 426 S.W.2d 562 (Tex.Sup.1968). We therefore look to the entire record in making inquiry whether any ". . . juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." Goforth v. Alvey, supra, 271 S.W.2d p. 404.

Bearing in mind the foregoing, we look to the instances of alleged impropriety in counsel for the plaintiff's jury argument. In one, defendant's counsel was referred to as a "fisherman" casting to "catch one member of this jury" so that the case would have to be tried again. The trial judge overruled objection to such argument. In another, plaintiff's counsel stated, "How concerned is Utica Mutual about this case? We have not seen any of their representatives down here. They give little concern to this matter". In response to objection the court responded "Stick to the facts, Counsel." In another instance, and in connection with a particular special is-

sue, counsel stated "The insurance company wouldn't even give her the benefit of the date that she has manifest hardship." Objection to such argument was sustained and the trial judge directed, "Strike it out". No request for additional instruction was made. In another instance counsel stated that the insurance company would " . . . have never operated on her. They would never had paid for the operation. They would have closed their eyes to it." Objection was here sustained by the court and again no request for jury instruction was made. In another instance counsel stated " . . . don't turn your back on this woman in need. Open your heart for a little compassion—". Objection to this line of argument was sustained and in response to request for instruction the court stated "The jury has been instructed already, and they will carry that instruction into the juryroom." In another instance counsel argued that if there were one doctor who would fault plaintiff's physician the jury would have heard from him. Objection was here overruled.

The instant case was hotly contested on every issue by able and vigorous counsel. The plaintiff was put to her proof on every element necessary to her recovery. There was no "lump sum" or "manifest hardship" stipulation. Defendant took the position that there was no injury to plaintiff's back. It was characterized by the defendant as at most a limited back strain. Defendant's counsel made repeated reference to the myelogram test and its allegedly uncertain and unreliable results and alluded to youth and inexperience on the part of plaintiff's physician. Defendant took the position that the operation was not called for, even though plaintiff's doctor felt it was necessary and testified that surgery did, in fact, reveal herniated discs in plaintiff's low back. This is a part of the background against which we must view the alleged improprieties in counsel's closing argument.

First, we are of the opinion that some of the argument is justified as a proper inference from the record; it is not im-

proper. Other portions are of a "curable" type. Transcontinental Bus System, Inc. v. Scirratt, 376 S.W.2d 56 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.). Most of the curable type were corrected by instruction from the court. As to any remaining portion, any " . . . inference that the trial judge regarded the argument as proper was not strong enough to constitute harmful error." Otis Elevator Company v. Wood, supra, 436 S.W.2d p. 333. Taken all together we are of the opinion that any remaining error in the argument did not constitute such a denial of the right of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, Tex.R.Civ.P.

■ Appellant makes one additional reference to jury argument which falls outside what has been heretofore stated. It concerns the statement by counsel for the plaintiff that " . . . even if she obtains total benefits, the maximum the law allows is $35 a week for 401 weeks". Alleging error, appellant cites Sisk v. Glens Falls Indemnity Company, 310 S.W.2d 118 (Tex. Civ.App.—Houston 1958, writ ref'd n. r. e.) ; and Cooper v. Argonaut Insurance Co., 430 S.W.2d 35 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). In both of these cases "lump sum" had been stipulated. In the instant case there had been no stipulation and in addition the jury already had been informed, upon the reading of plaintiff's original petition, that the plaintiff was seeking $35.00 per week for a period not exceeding 401 weeks. The words of Justice Pope, speaking for the San Antonio Court of Civil Appeals are appropriate here: " . . we are of the opinion that the argument did no more than tell the jury what was already before it without objection, and what it already knew, or would learn by the simple arithmetic involved." Texas Employers' Insurance Association v. Hadley, 289 S.W.2d 809, 812 (Tex.Civ.App.—San Antonio 1956, no writ). Appellant's points of error relative to improper jury argument are overruled.

■ Appellant's next point of error relates to the submission of special issue number 6 and, predicated thereon, special issue number 10. These issues and the court's definition of partial incapacity, were as follows:

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that such injury was or will be a producing cause of any partial incapacity?

Answer "We do" or "We do not".

## SPECIAL ISSUE NO. 10

Find from a preponderance of the evidence the reduction in plaintiff's average weekly earning capacity during such partial incapacity.

Answer by stating in dollars and cents the difference between her average weekly wage before the injury and her average weekly earning capacity during such partial incapacity.

.    .    .    .    .    .

By the term "partial incapacity", as used in this charge is meant that an employee by reason of an injury sustained in the course of his employment is only able to perform a part of the usual tasks of a workman or is only able to perform labor of a less remunerative class than he performed prior to his injury, whereby he suffers a depreciation or reduction in his earning capacity.

Defendant's requested special issue A, and predicated thereon, special issue B, were as follows:

## SPECIAL ISSUE NO. A

What do you find from a preponderance of the evidence to be the average weekly earning capacity if any, of plaintiff, Lois Lola Jacobs, during the period of her partial incapacity, if any you have found?

Answer by stating the amount, if any, in dollars and cents.

## SPECIAL ISSUE NO. B

Find from a preponderance of the evidence the average daily wage which Lois Jacobs earned during the year immediately preceding her injury.

Answer in dollars and cents.

Appellant argues that the court's submission, in view of Vernon's Tex.Rev.Civ.Stat. Ann. art. 8306, sec. 11 (1969), the Workmen's Compensation Statute, was improper, prejudicial, constitutes a comment on the evidence and a misplacement of the burden of proof. As we understand appellant's contention it is that, under the court's charge as submitted, the jury finding of partial incapacity compelled a finding of reduction in earning capacity, thus improperly commenting on the weight of the evidence and improperly placing the burden of proof upon the defendant. In support of such position appellant cites Texas Employers' Insurance Association v. Swaim, 278 S.W.2d 600 (Tex.Civ.App.—Amarillo 1954, writ ref'd n. r. e.); Employers Reinsurance Corp. v. Wagner, 250 S.W.2d 420 (Tex.Civ.App.—Galveston 1952, writ ref'd n. r. e.); and Gonzales v. Texas Employers' Insurance Ass'n, 419 S.W.2d 203 (Tex.Civ.App.—Austin 1967, no writ).

■ The definition of "partial incapacity", as set out in the court's charge above, has been said to be in the preferred form when the phrase "whereby he suffers a depreciation or reduction in his earning capacity" is preceded by a comma. So stated, the quoted phrase gives adjectival reference to the entire definition of "partial incapacity". Employers Reinsurance Corporation v. Holland, 162 Tex. 394, 347 S.W.2d 605 (1961); compare, Indemnity Insurance Co. of North America v. Craik, 162 Tex. 260, 346 S.W.2d 830 (1961). We hold that in view of the correctly submitted definition of "partial incapacity" the issues submitted by the court were not improper. Appellant's second point of error is overruled.

**506**

The next point asserts error in the trial court's refusal to submit appellant's requested issues C through H which alleged the tender of employment by Blalock Nursing Home and the refusal of such employment by the plaintiff. The Act (Tex.Rev. Civ.Stat.Ann. art. 8306, sec. 12a (1917)) provides that if an injured employee refuses employment procured for him which is reasonably suited to his incapacity and physical condition, he shall not be entitled to compensation during the period of refusal.

We believe the denial of the requested issues was proper under any one of several theories. First, we hold this to be a matter constituting an avoidance or affirmative defense. Tex.R.Civ.P. 94. It was not specifically plead or set forth affirmatively. Secondly, even though this issue be construed as tried by consent (and we do not so hold) no request for a trial amendment to the pleadings was made by the defendant. Tex.R.Civ.P. 67; Harkey v. Texas Employers' Ins. Ass'n, 146 Tex. 504, 208 S.W.2d 919 (1948). Third, the testimony relative to the purported offer of reemployment arose during an earlier trial of this same case and appears, as described by the witness, as ". . . a nebulous situation". In a part of her testimony the witness stated "I have an opening today. I might not have it tomorrow" and "Until she came through the regular channels and procedures, I can't offer her anything . . .". This we construe as substantially less than that contemplated by the statute, that is an unqualified tender of employment. Lastly, the employment was not shown to be reasonably suited to the plaintiff's incapacity and physical condition. See Texas Employers' Insurance Ass'n v. Walker, 298 S.W.2d 643 (Tex.Civ. App.—Fort Worth 1957, writ ref'd n. r. e.). Appellant's third point of error is overruled.

Argument is next made that the trial court erred in allowing Dr. Barnes to testify concerning his medical charges and the necessity therefor, as well as the reasonableness of his, other doctors' and the hospital's charges and in submitting issues on these matters, such charges not first being submitted to and passed on by the Industrial Accident Board. Appellant did not properly preserve assignment of error in this connection and may not expand upon those which were preserved at this juncture. Even if this were not so it has been held that recovery may be made for medical or hospital expenses incurred after the Board award, but before the trial, without first presenting the claim to the Industrial Accident Board. Transport Insurance Company v. Polk, 400 S.W. 2d 881, 883 (Tex.Sup.1966). This point of error is overruled.

Appellant's remaining points of error have been carefully considered. We are of the opinion that the jurisprudence of this state is weighted against them by previous decisions and they are each overruled.

The judgment of the trial court is affirmed.